## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **WILLIAM T. H.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 21-2140-JWL** |
| **KILOLO KIJAKAZI,**[2] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.     Background

Plaintiff protectively filed applications for DIB and SSI benefits on April 21, 2015.  (R. 264, 266).  Plaintiff's amended alleged onset date is March 31, 2015.  Id. at 31, 523.  Plaintiff's application was denied in prior proceedings before the Social Security Administration (SSA) and appealed to a court in this district.  William T. [H.], Sr. v. Saul, Case No. 19-cv-02108-CM (Doc. 1).  That case was ultimately remanded to the SSA pursuant to Plaintiff's Unopposed Motion for Remand.  (R. 734). On remand, a new ALJ issued a decision which is now before this court.  Plaintiff claims the ALJ erred in evaluating his allegations of symptoms resulting from his impairments.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)).   Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II      Discussion**

Plaintiff argues "the ALJ made no specific findings as to" his allegations of symptoms and failed to account for pain properly when assessing RFC.  (Pl. Br. 6).  He argues, "Although the ALJ recited [Plaintiff]'s subjective testimony he provided at the hearing, [the ALJ] made the generic claim that [Plaintiff] was not 'entirely credible' without specifically identifying what he accepted as credible and what he disbelieved."

Id. at 7.  He argues the ALJ did not consider if there was a "loose nexus" between his impairments and his allegations of symptoms and "did not consider 'whether considering all the evidence, both objective and subjective,' [Plaintiff]'s impairments and resulting limitations were in fact disabling."  Id.  Plaintiff cites his allegations of symptoms, id. at 8, and explains how, in his view, "his testimony is entirely consistent with the medical evidence."  Id., and 9-10.  He argues the ALJ did not consider the regulatory factors for evaluating allegations of symptoms, and erroneously relied on Plaintiff's lack of treatment to discount his allegations.  Id. at 11-13.

The Commissioner responds that the ALJ properly discounted Plaintiff's allegations of symptoms.  He argues the ALJ properly applied the Commissioner's two-step process for evaluating symptoms (Comm'r Br. 5) and provided an extensive analysis supported by extensive citation to record evidence, including evaluation of objective medical evidence, Plaintiff's work history, Plaintiff's failure to seek care, inconsistencies in Plaintiff's statements, and Plaintiff's exaggerations.  Id. at 7-12.  She argues the ALJ considered the regulatory factors, Plaintiff's argument that his testimony is consistent with the medical evidence merely asks the court to reweigh the evidence in his favor, his argument regarding lack of treatment misunderstands the regulations and case law, and his argument regarding daily activities misunderstands the ALJ's evaluation of Plaintiff's daily activities.  Id. at 12-15.

### A.     Standard for Evaluating a Claimant's Allegations of Symptoms

An ALJ's evaluations of a claimant's allegation of symptoms are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent

v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving witness allegations.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529. 416.929).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in Soc. Sec. Ruling (SSR) 16-3p. Brownrigg v. Berryhill, 688 Fed. Appx. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. §§ 404.1529 and 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on December 14, 2020, when this case was decided.  Nonetheless, to the extent, and only to the extent, "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

symptoms; measures plaintiff has taken to relieve symptoms; and other factors

concerning limitations or restrictions resulting from symptoms.  20 C.F.R.

§§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B.    The ALJ's Findings

The ALJ stated in making his RFC finding he had "considered all symptoms and

the extent to which these symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence, based on the requirements of 20 CFR

404.1529 and 416.929 and SSR 16-3p."  (R. 527).  He explained the standard he applied:

> In considering the claimant's symptoms, I must follow a two-step process
> in which it must first be determined whether there is an underlying
> [(1)] medically determinable physical or mental impairment(s)--i.e., an
> impairment(s) that can be shown by medically acceptable clinical or
> laboratory diagnostic techniques--that could reasonably be expected to
> produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) [(2)] that
> could reasonably be expected to produce the claimant's pain or other
> symptoms has been shown, I must evaluate the intensity, persistence, and
> limiting effects of the claimant's symptoms to determine the extent to
> which they limit the claimant's work-related activities.  For this purpose,
> whenever statements about the intensity, persistence, or functionally
> limiting effects of pain or other symptoms are not substantiated by
> objective medical evidence, I must [(3)] consider other evidence in the
> record to determine if the claimant's symptoms limit the ability to do work-
> related activities

Id. 527-28 (numbering added for correlation with the Thompson standard).

He stated his conclusion regarding Plaintiff's allegations of symptoms followed

immediately by his summary of the evidence and including his reasons for discounting

Plaintiff's allegations of symptoms:

I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant's lupus dates back a number of years, though the first objective documentation is from 2008 (1F/8 [R. 382]).  [(1)] Lab tests do not show signs of anemia; a high sedimentation rate; or decreased liver or kidney function, all associated with lupus (6F/16, 18; 9F/14, 27, 30, 33, 39, 40 [R. 418, 420, 438, 451, 454, 457, 463-64]).

The claimant continued working until 2015 "despite my conditions" (2E/2). In his disability report, he wrote that he stopped working on March 31, 2015 "because the company sold and my job ended."  Furthermore, he wrote, "I cannot go back to work now due to my conditions."  [(2)] He did not explain why he could no longer work in this report, which was completed just three weeks after his job ended.  A review of the record does not document a decline in his health around that time.  In fact, he had not seen a physician since 2008.  He began seeing a primary care provider in August 2015, and his complaints mostly consisted of rash and pain throughout his body.  He saw this provider for about a year and in 2016 went six months between visits (9F/1 [R. 425]).  He has also complained of chest pain, [(3)] but an August 2016 stress test revealed "good exercise tolerance"; he only achieved 78% of maximum expected heart rate and could not exercise further due to back and lower extremity pain (11F/9 [R. 485]).  His ejection fraction was estimated at 60% (14F/13 [R. 502]).  The claimant has also alleged dizziness, [(4)] but there are no objective findings supporting this allegation; a CT of his head from February 2016, the indication for which was dizziness, was unremarkable (10F/3 [R. 475]).

He had [(5)] no treatment for any condition from August 2016 until December 2018, when he began receiving dental care, and did not seek additional treatment for lupus until February 2020.  He attributed the large gap in his treatment to an inability to receive care at the Southeast Kansas clinic because of an unpaid bill (Testimony).  [(6)] Yet, he received dental care at the same facility (15F [R. 855-65]) and provided [(7)] no explanation why he did not seek care at another facility.  At the April 2020 hearing, he denied applying for Medicaid [(8)] but at the November hearing claimed he had applied but was found ineligible.  He has asserted that he cannot afford some medication (Testimony), [(9)] yet he has maintained a

cigarette habit (15F/5; 16F/2 [R. 859, 867]).  He currently takes Plaquenil [(10)] but no pain medication, despite unrelenting pain (Testimony).

At the April 2020 hearing, the claimant testified his lupus had been at the same level of intensity for five years.  [(11)] Yet, in 2016, almost a year after his 2015 onset date, he reported working on his truck and had installed a new water heater and dryer (9F/10 [R. 434]).  Furthermore, the claimant asserted he relies on his wife – who receives disability for arthritis – to drive, perform all household chores, prepare their meals, grocery shop, and assist him with dressing and bathing (Testimony).  [(12)] However, in his 2015 function report, the claimant reported being able to do many of these things.  I find the claimant's allegation of declining ability to perform essential functions unpersuasive.  Given his alleged reliance on his wife for nearly all essential tasks, [(13)] I find it reasonable that the claimant would demonstrate a greater degree of urgency in securing treatment.  He might, for example, take advantage of emergency room care since he was reportedly prohibited from additional treatment at the clinic due to unpaid bills.  He could have exhausted his medication supply; [(14)] instead, when he reestablished care four years later, he brought in pills from 2016 that he had not taken (17F/3 [R. 874]).  [(15)] Even though he was offered an opportunity to resume medication in February 2020, he declined to do so (16F/4 [R. 869]).

In addition to lupus, the claimant has degenerative changes in his lumbar spine, as shown by imaging (14F/14-15 [R. 503-04]).  Treatment was again minimal.  [(16)] He had injections in the past, but later declined further such treatments and stated that he did not want surgery; there is no indication surgery was ever recommended (17F/3 [R. 874]).  Though he requested narcotic medication, a provider required a referral to an orthopedist or neurologist first.  There are no records of consultations with such specialists.

In a June 2015 consultative examination, the claimant appeared in no acute distress, [(17)] but displayed "significant dramatization" of his vision.  He had full range of motion of his joints "with dramatization of pain."  Range of motion testing of his lumbar spine elicited "severe pain."  The examination further revealed 5/5 strength throughout; normal sensation and reflexes; normal coordination and muscle tone; and negative straight leg raise.  He was able to perform tandem gait, heel/toe walk, and balance on his legs.  His gait was of normal speed and stable without the use of an assistive device, [(18)] though he had "inconsistent stooping posture" (3F [R. 391-95]).  Other examinations in the record reveal normal strength, range of motion, and motor function, with few other significant findings;

they do reveal rash consistent with lupus, joint pain, coarse breath sounds, and swelling of the knees and ankles (9F/13, 16, 19, 22, 25; 11F/8; 16F/4-5; 17F/2 [R. 437, 440, 443, 446, 449, 484, 869-70, 873]).  A single progress note from October 2015 mentions the claimant "may use walker if needed," [(19)] but no examination mentions use of a walker or other assistive device.

(R. 528-29) (numbering added for ease of reference).

### C.     Analysis

The court finds no error in the ALJ's evaluation of Plaintiff's allegations of disabling symptoms.  Plaintiff appears to argue the ALJ did not apply the correct legal standard when he argues the ALJ did not consider if there was a "loose nexus" between his impairments and his alleged symptoms and did not consider all the evidence to determine whether Plaintiff's impairments and the resulting symptoms are in fact disabling.  (Pl. Br. 7).  However, the decision is clear that the ALJ applied the correct standard.  The ALJ stated he applied the standard from 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p (R. 527) and he explained that standard.  Id. at 527-28.  That the ALJ's explanation of the applicable standard does not use the language of the standard as expressed by the Tenth Circuit in Thompson is not surprising.

The Commissioner views the standard as a two-step inquiry—first, whether there is an underlying medically determinable physical or mental impairment that can be shown by medically acceptable clinical or laboratory diagnostic techniques that could reasonably be expected to produce Plaintiff's pain or other symptoms; and if so, whether the alleged symptoms are substantiated by the objective medical evidence or the other record evidence.  (R. 527-28) (summarizing the evaluation set forth in 20 C.F.R.

§§ 404.1529, 416.929 and explained in SSR 16-3p).  Courts in the Tenth Circuit view it

as a three-step inquiry as set forth in Luna and codified in Thompson.  First, whether

there is a symptom-producing impairment shown by objective medical evidence; second,

if there is a "loose nexus" between the impairment and the allegations of symptoms; and

third, if considering all the evidence the symptom is in fact disabling.  The first step of

the Commissioner's formulation includes the first two steps of the courts' formulation—

underlying medically determinable physical or mental impairment that can be shown by

medically acceptable clinical or laboratory diagnostic techniques (a symptom-producing

impairment shown by objective medical evidence) that could reasonably be expected to

produce Plaintiff's pain or other symptoms (a "loose nexus" between the impairment and

the allegations of symptoms).  The second step in the Commissioner's formulation and

the third step of the courts' formulation are the same—to consider all the record evidence

subjective and objective.  Plaintiff has shown no error in the ALJ's application of the

standard.

Plaintiff's argument the ALJ did not consider the regulatory factors and made no

specific findings regarding his allegations of symptoms and failed to account for his pain

properly is belied by the ALJ's summary of the evidence and his reasons for discounting

Plaintiff's allegations of disabling symptoms as quoted by the court above.  Supra, at 9-

11.  By the court's count, the ALJ provided 19 inconsistencies from the record upon

which he relied to discount Plaintiff's allegations.  The ALJ cited record evidence

supporting his findings and the court's review reveals the evidence supports the ALJ's

reasons.  To the extent Plaintiff may be arguing that the ALJ must specifically state each

allegation he accepted and each allegation he rejected, that is not the standard.  In the face

of inconsistencies in the record, especially the number of inconsistencies cited here, the

ALJ as the fact finder, after considering the objective medical evidence and all other

record evidence, is justified in finding Plaintiff's symptoms are not disabling as alleged.

Finally, the court addresses Plaintiff's argument the ALJ erroneously relied upon

Plaintiff's lack of treatment to discount his allegations.  Although neither party

mentioned it in their Brief, controlling law on the issue Plaintiff alleges changed more

than two years before the ALJ issued his decision in this case on December 14, 2020.

SSR 18-3p; Titles II and XVI: Failure to Follow Prescribed Treatment, 2018 WL

4945641 (October 2, 2018 SSA).  As that SSR notes in its Supplementary Information,

"Although SSRs do not have the same force and effect as law, they are binding on all

components of the Social Security Administration in accordance with 20 CFR

402.35(b)(1) and are binding as precedents in adjudicating cases." Id., 2018 WL

4945641, at *1; see also, Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

SSR 18-3p explains the agency "will determine whether an individual has failed to

follow prescribed treatment only if all three [of certain specific] conditions exist." 2018

WL 4945641, *2.  The first prerequisite condition is "[t]he individual is otherwise

entitled to disability ... benefits under titles II or XVI of the Act." Id.  The SSR explains:

> We only perform the failure to follow prescribed treatment analysis
> discussed in this SSR after we find that an individual is entitled to disability
> or eligible for statutory blindness benefits under titles II or XVI of the Act,
> regardless of whether the individual followed the prescribed treatment. We
> will not determine whether an individual failed to follow prescribed
> treatment if we find the individual is not disabled, not blind, or otherwise
> not entitled to or eligible for benefits under titles II or XVI of the Act.

13

Id. 2018 WL 4945641 at *3.  Here, the ALJ never found Plaintiff was otherwise entitled to benefits under the Act.  Therefore, consideration of whether Plaintiff followed prescribed treatment was not triggered in this case, and the four-part test for this issue never came into play.

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 29, 2022, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**